1

2

3                     UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6   LESLIE BURROWS, et al.,                Case No.  16-cv-06356-PJH

7              Plaintiffs,                 **ORDER GRANTING MOTIONS TO**
                                           **DISMISS WITH LEAVE TO AMEND**
8         v.
                                           Re: Dkt. Nos. 35, 41, 63
9   EXPERIAN INFORMATION
    SOLUTIONS, INC., et al.,
10
             Defendants.
11

12         Defendants Chase Bank USA, N.A. and Equifax, Inc.'s motions to dismiss came

13   on for hearing before this court on March 1, 2017.  Plaintiffs Leslie and Louis Burrows

14   appeared through their counsel, Elliot Gale.  Defendant Chase Bank USA, N.A. appeared

15   through its counsel, Andrew Soukup and Megan Rodgers.  Defendant Equifax, Inc.

16   appeared through its counsel, Thomas Quinn.  Former defendant Bank of America, N.A.

17   appeared through its counsel, Alice Miller, and has joined Chase's motion.  Dkt. 61.[1]

18   Defendant Asset Acceptance LLC appeared through its counsel, Thomas Landers, and

19   has joined Chase's motion.  Dkt. 59.  Non-moving defendant Experian Information

20   Solutions, Inc. appeared through its counsel, Ben Lee.  Having read the papers filed by

21   the parties and carefully considered their arguments and the relevant legal authority, and

22   good cause appearing, the court hereby rules as follows.

23                               **BACKGROUND**

24   **A.    Chapter 13 Bankruptcy**

25         Chapter 13 bankruptcy allows debtors with regular income to "repay creditors in

26   part, or in whole, over the course of a three-to-five-year period."  In re Blendheim, 803

27   _____

28   [1] Following the hearing, Bank of America was dismissed from the action pursuant to
    stipulation.  Dkt. 65.

United States District Court
Northern District of California

F.3d 477, 485 (9th Cir. 2015).  Under Chapter 13, the debtor proposes a debt repayment plan that must comply with a number of statutory requirements.  Id. at 485–86.  "A Chapter 13 debtor seeking a discharge typically proposes a plan in which the discharge is granted at the end of the proceeding, after the debtor completes all required payments under the plan."  Id. at 486.  If the Chapter 13 plan satisfies all of the statutory requirements, the bankruptcy court approves or "confirms" the plan.  11 U.S.C. § 1325(a); In re Flores, 735 F.3d 855, 857 (9th Cir. 2013).

If the debtor makes the payments under the confirmed plan, the bankruptcy court will grant a discharge of the debts, which "releases debtors from personal liability on claims and enjoins creditors from taking any action against the debtor."  Blendheim, 803 F.3d at 486–87.  "Many debtors, however, fail to complete a Chapter 13 plan successfully."  Harris v. Viegelahn, 135 S. Ct. 1829, 1835 (2015).  If the debtor fails to make the required payments, he may either "convert [the] Chapter 13 case to a [bankruptcy] case under a different chapter," or dismiss the action.  Blendheim, 803 F.3d at 487.  The effect of dismissal is to restore the legal status quo prior to the Chapter 13 filing:  "dismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding and renders him free to exercise any nonbankruptcy collection remedies."  Id. at 487.

**B.    The Complaint**

The complaint in this case is one of more than two hundred similar actions in this district filed by the Sagaria Law, P.C. firm against consumer credit reporting agencies in late 2016.  All of these cases employ the same form complaint, with about a dozen paragraphs individualized for each plaintiff.  The remainder of the complaint, including the causes of action, is copied nearly verbatim in each case.

Plaintiffs are individuals who filed for Chapter 13 bankruptcy and allege that their debts were reported inaccurately in light of their confirmed Chapter 13 plan.  Experian Information Solutions, Inc. ("Experian"), Equifax, Inc. ("Equifax"), or both credit reporting agencies ("CRAs") are named as defendants.  Also named as defendants in most of the

United States District Court
Northern District of California

1    cases are "furnishers" of credit information, such as Chase Bank USA, N.A. ("Chase")

2    and Bank of America, N.A. ("BANA").

3        The complaint accuses CRAs and furnishers of "ignor[ing] credit reporting industry

4    standards for accurately reporting bankruptcies."  Compl. ¶ 7.  Allegedly, this inaccurate

5    reporting is an effort to perpetuate the "myth" that filing for bankruptcy ruins consumers'

6    credit scores for years.  Compl. ¶¶ 3–7.

7        The complaint explains in some detail how a consumer's FICO credit score is

8    calculated, and how the score derives from information that furnishers report to CRAs.

9    Compl. ¶¶ 20–36.  Plaintiffs then describe the Metro 2 credit reporting standards

10   promulgated by the Consumer Data Industry Association (the "Metro 2 standards" or

11   "CDIA guidelines"), which plaintiffs allege is the "industry standard for accurate credit

12   reporting."  Compl. ¶¶ 37–52.  The Metro 2 standards have different "CII indicator" codes

13   that are used to note the filing and discharge of Chapter 7 and 13 petitions.  Compl.

14   ¶¶ 55–62.  Plaintiffs allege that the CII indictor "D" is used when a Chapter 13 petition has

15   been filed, but no discharge yet entered.  Compl. ¶ 59.

16       The complaint alleges that, prior to the confirmation of a Chapter 13 plan, the

17   "accepted credit reporting standard" is to "report the outstanding balance amount as of

18   the date of filing" of the bankruptcy petition, and to note the bankruptcy filing with CII

19   indicator code D.  Compl. ¶¶ 73, 75, 76–77.  Post-confirmation, however, plaintiffs allege

20   that the balances should be updated to reflect the confirmed Chapter 13 plan.  Reporting

21   ongoing past due amounts and late payments, instead of only indicator D, is "not

22   generally accepted as accurate by the credit reporting industry."  Compl. ¶ 84.  Plaintiffs

23   allege that the industry standard is to "report the balance owed under the Chapter 13 plan

24   terms," which is typically lower than the original amount, and to "report a $0.00 balance" if

25   the confirmed plan does not call for any payments on that particular debt.  Compl. ¶¶ 80–

26   81.

27       This matter consists of two consolidated actions, one brought by plaintiff Leslie

28   Burrows and the other brought by her husband Louis Burrows.  In the lead case, Leslie

3

Burrows filed for Chapter 13 bankruptcy protection on December 31, 2013.  Compl. ¶ 87.

She ordered credit reports from the CRAs on March 17, 2016, and filed a dispute letter

with the CRAs alleging inaccuracies with respect to her accounts with Chase, Asset

Acceptance LLC, BANA, and Commerce Bancshares.  Compl. ¶¶ 105, 107–108, 112–

115.  On September 27, 2016, plaintiff ordered a second set of credit reports, but found

that the inaccuracies remained.  Compl. ¶ 111.  The complaint does not contain any

specific allegation regarding credit score impact.

Louis Burrows filed for Chapter 13 bankruptcy protection jointly with his wife on

December 31, 2013.  No. 16-06356-PJH, Compl. ¶ 87.  The Burrows' Chapter 13 plan

was confirmed on June 25, 2014.  See No. 2:13-bk-40239-VZ Dkt. 32 (Bankr. C.D. Cal.).

Louis ordered credit reports from the CRAs and filed a dispute letter on the same dates

as his wife, and he alleges the same inaccuracies with respect to the BANA and

Commerce Bancshares accounts.  No. 16-06356-PJH Compl. ¶¶ 105, 107, 110–112.

Plaintiffs assert two claims, one under the Fair Credit Reporting Act ("FCRA") and

one under the California Consumer Credit Reporting Agencies Act ("CCRAA").  The first

cause of action alleges that the furnishers and CRAs violated FCRA "by failing to conduct

a reasonable investigation and re-reporting misleading and inaccurate information."  This

cause of action relies repeatedly on the alleged failure of the CRAs and furnishers to

"comport with industry standards."  The second cause of action under CCRAA is made

only against the furnishers, alleging that they "intentionally and knowingly reported

misleading and inaccurate account information to the CRAs that did not comport with

well-established industry standards."

## DISCUSSION

### A.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d

1191, 1199–1200 (9th Cir. 2003).  To survive a motion to dismiss for failure to state a

claim, a complaint generally must satisfy the requirements of Federal Rule of Civil

1    Procedure 8, which requires that a complaint include a "short and plain statement of the

2    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

3         A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

4    plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to

5    support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

6    (9th Cir. 1990).  The court is to "accept all factual allegations in the complaint as true and

7    construe the pleadings in the light most favorable to the nonmoving party."  Outdoor

8    Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899–900 (9th Cir. 2007).

9         Legally conclusory statements, not supported by actual factual allegations, need

10   not be accepted by the court.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The

11   allegations in the complaint "must be enough to raise a right to relief above the

12   speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations

13   and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual

14   content that allows the court to draw the reasonable inference that the defendant is liable

15   for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-

16   pleaded facts do not permit the court to infer more than the mere possibility of

17   misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

18   entitled to relief.'"  Id. at 679.  In the event dismissal is warranted, it is generally without

19   prejudice, unless it is clear the complaint cannot be saved by any amendment.  See

20   Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

21   **B.    Legal Analysis**

22        Defendants seek dismissal on three different grounds.  First, they argue that

23   plaintiffs are judicially estopped from asserting their claims because they failed to

24   disclose the claims as a contingent asset in the bankruptcy court.  Second, they argue

25   that the complaint fails to plead an "inaccuracy" in reporting that is actionable under

26   FCRA as a matter of law.  Third, they argue that the complaint fails to sufficiently allege

27   either actual or statutory damages.

28   ///

### 1.    Judicial Estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).  The Supreme Court has articulated three factors to guide the court's discretion: (1) whether a party's later position is "clearly inconsistent"' with its earlier position; (2) whether that party has succeeded in persuading a court to accept its earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001).

In the bankruptcy context, the Ninth Circuit has adopted "a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action."  Ah Quin v. Cnty. of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013).  The logic is straightforward: by not listing the lawsuit in the bankruptcy schedules, the debtor represented that the asset did not exist.  The bankruptcy court accepted that position in its confirmation or discharge order, and the claim was hidden from the bankruptcy estate to the detriment of the creditors and advantage of the debtor.  Id.

Thus, "a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."  Hamilton, 270 F.3d at 783.  If a cause of action is not known at the time of the bankruptcy filing, judicial estoppel "will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset."  Id. at 784.

In this case, the court declines to exercise its discretion to estop plaintiffs because only two of the three New Hampshire factors have been established.  There is little doubt that plaintiffs' positions in this court and the bankruptcy court—"a claim does not exist"

6

versus "a claim does exist"—are inconsistent.  See Ah Quin, 733 F.3d at 271.  Moreover,

should plaintiffs ultimately obtain a discharge, they would have (at least arguably)

obtained an "unfair advantage."  See Benetatos v. Hellenic Republic, 371 F. App'x 770,

771 (9th Cir. 2010) (affirming estoppel ruling based on Chapter 13 discharge).  However,

defendants have not established that the bankruptcy court ever "accepted" the plaintiffs'

position.  Typically, acceptance is accomplished either through a confirmation order or a

discharge order.  See In re An-Tze Cheng, 308 B.R. 448, 453 (B.A.P. 9th Cir. 2004)

("Among other possibilities, the grant of a discharge (even if later revoked) or the

confirmation of a plan may constitute sufficient 'acceptance' of the accuracy of schedules

so as to permit judicial estoppel.").

　　　　Here, by definition, the claims did not accrue until after confirmation.  Thus,

plaintiffs could not possibly have listed the claims as a contingent asset when they initially

filed for Chapter 13 bankruptcy.  Arguably, plaintiffs should have supplemented or

amended their schedules to disclose their FCRA and CCRAA claims to the bankruptcy

court as a contingent asset.  See Fed. R. Bankr. P. 1007(h) (debtor's duty to file a

supplemental schedule within 14 days of acquisition of an interest in property); see also

11 U.S.C. § 512(a)(1).  Nonetheless, plaintiffs have not received a discharge, so there

has been no acceptance of the plaintiffs' positions by the bankruptcy court.  See Stewart

v. Bank of Am., N.A., No. 16-CV-05322-JST, 2016 WL 7475613, at *8 (N.D. Cal. Dec. 28,

2016) (estoppel inappropriate when "[t]here has been no confirmation of a modified plan,

issuance of a new scheduling order, or discharge of Plaintiffs' debts on reliance of the

[non-disclosed claims.]"); Keller v. Experian Info. Sols., Inc., No. 16-CV-04643-LHK, 2017

WL 130285, at *9 (N.D. Cal. Jan. 13, 2017) (declining to estop plaintiff because "at this

time, the Court does not have enough information to know whether the bankruptcy court

has 'accepted' Plaintiff's position").  Moreover, it is not clear that plaintiffs' failure to

amend the schedules disadvantaged the creditors in a significant way, given that the

potential damages here are likely nominal.

United States District Court
Northern District of California

1      The facts of <u>Hamilton</u>, upon which defendants rely, are readily distinguishable.

2  The debtor in <u>Hamilton</u> was aware of the claims at issue prior to filing for bankruptcy,

3  knowingly failed to report them, and ultimately received a Chapter 7 discharge.  270 F.3d

4  at 781.  More on point is the recent decision in <u>Momoh v. Wells Fargo Bank NA</u>, which

5  addressed a claim under the Telephone Consumer Protection Act that arose post-

6  confirmation.  <u>See</u> No. 15-cv-04729-HSG, 2016 U.S. Dist. LEXIS 86276, at *2–3 (N.D.

7  Cal. July 1, 2016).  <u>Momoh</u> held that estoppel was inappropriate because "the bankruptcy

8  court has not taken any formal action since Plaintiff's plan was confirmed . . . and thus

9  never acted in reliance upon Plaintiff's omission of these claims."  <u>Id.</u> at *11.

10      For these reasons, the court finds that the application of judicial estoppel is

11  inappropriate and declines to estop plaintiffs from asserting their claims.

12      **2.**      **Actual Inaccuracy under FCRA**

13      Defendants' primary basis for dismissal is that the complaint fails to allege any

14  "inaccuracy" under FCRA.  Plaintiffs' FCRA claims are made pursuant to 15 U.S.C.

15  §§ 1618s-2(b) and 1618i-a(1).  Under § 1618i-a(1), after receiving notice of a dispute

16  from a consumer, a CRA must "conduct a reasonable reinvestigation to determine

17  whether the disputed information is inaccurate and record the current status of the

18  disputed information."  15 U.S.C. § 1618i-a(1).  Under § 1618s-2(b), after receiving a

19  notice of dispute from a CRA, a furnisher must conduct a reasonable investigation with

20  respect to the disputed information and report the results to the CRA.  <u>Gorman v. Wolpoff</u>

21  <u>& Abramson, LLP</u>, 584 F.3d 1147, 1154, 1157 (9th Cir. 2009).  FCRA creates a private

22  right of action for willful or negligent noncompliance with these requirements.  <u>Id.</u> at 1154.

23      To state an FCRA reinvestigation claim, a plaintiff must show that: (1) he found an

24  inaccuracy in his credit report; (2) he notified a CRA; (3) the CRA notified the furnisher of

25  the information about the dispute; and (4) the furnisher and/or CRA failed to reasonably

26  investigate the inaccuracies.  <u>Biggs v. Experian Info. Sols., Inc.</u>, No. 5:16-CV-01507-EJD,

27  2016 WL 5235043, at *1 (N.D. Cal. Sept. 22, 2016); <u>Gorman</u>, 584 F.3d at 1154–57.

28  Although the complaint does not allege specific facts about the furnishers' and/or CRAs'

investigations, plaintiffs do allege generally that any reasonable investigation would have revealed that the reporting was not in compliance with industry standards.

Inaccuracy is a required element of these FCRA claims.  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010) ("Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement."); Gorman, 584 F.3d at 1163 ("[A] furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s–2(b) simply by failing to report a meritless dispute.").  To be inaccurate, information must be either "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  Gorman, 584 F.3d at 1163.

The complaint alleges several different types of inaccuracies.  Plaintiffs' primary legal theory is that, after a Chapter 13 plan is confirmed, it is inaccurate to report that an account is delinquent or to report the loan balance per the original loan terms.  Rather, the lower amount owed per the confirmed Chapter 13 plan must be reported instead. Second, plaintiffs allege that credit reporting that fails to comply with the Metro 2 standards is necessarily inaccurate.  Finally, plaintiffs allege various other inaccuracies, such as failing to report a CII D indicator, reporting a debt as "in collections" or "charged off" despite the confirmed plan, and/or the failure to report that an account is being disputed.

### i.  Reporting Pre-confirmation Account Balances and Delinquencies During the Pendency of Bankruptcy

Plaintiffs' primary theory of inaccuracy is premised on the effect that the confirmed Chapter 13 plan has on plaintiffs' debts.  Plaintiffs argue that, prior to confirmation, the industry standard is to report the outstanding balance on the loan at the time the bankruptcy petition was filed, and to note the bankruptcy filing with the CII D indicator. After a Chapter 13 plan is confirmed, however, plaintiffs argue that because the confirmation order is a binding "final judgment" that modifies the status of the debt, it is

1    inaccurate to continue reporting the outstanding balance per the original loan terms.

2    Rather, the amount required to be paid to obtain a discharge under the Chapter 13 plan

3    must be reported, with a loan balance of $0.00 reported if the confirmed plan does not

4    call for any payments on that debt.

5         Plaintiffs' legal theory of inaccuracy is not a novel issue in this district.  The

6    unanimous view of the judges in this district that have considered the matter is that, at

7    least prior to discharge, reporting a loan balance and delinquent status per the original

8    terms—as opposed to the modified terms of the confirmed Chapter 13 plan—is neither

9    inaccurate nor misleading under FCRA.  See, e.g., Doster v. Experian Info. Sols., Inc.,

10   No. 16-CV-04629-LHK, 2017 WL 264401, at *4–*5 (N.D. Cal. Jan. 20, 2017) ("[A]lthough

11   reporting delinquent payments may be misleading if the debts have been discharged in

12   bankruptcy, 'it is not misleading or inaccurate to report delinquent debts that have not

13   been discharged' . . . . [because] the legal status of a debt does not change until the

14   debtor is discharged from bankruptcy.") (collecting cases); Biggs, 2016 WL 5235043, at

15   *2 ("Courts in this district have held that the FCRA does not prohibit the accurate

16   reporting of debts that were delinquent during the pendency of a bankruptcy action . . . so

17   long as the bankruptcy discharge is also reported if and when it occurs."); Blakeney v.

18   Experian Info. Sols., Inc., No. 15-CV-05544-LHK, 2016 WL 4270244, at *5 (N.D. Cal.

19   Aug. 15, 2016) ("[C]ourts in this district have consistently held that it is not misleading or

20   inaccurate to report delinquent debts that have not been discharged."); Mortimer v. JP

21   Morgan Chase Bank, N.A., No. C 12-1936 CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug.

22   2, 2012) ("While it might be good policy in light of the goals of bankruptcy protection to

23   bar reporting of late payments while a bankruptcy petition is pending, neither the

24   bankruptcy code nor the FCRA does so."); Harrold v. Experian Info. Sols., Inc., 2012 WL

25   4097708, at *4 (N.D. Cal. Sept. 17, 2012) ("[R]eports of delinquencies in payment while

26   bankruptcy proceedings are still ongoing is not 'incomplete or inaccurate' information.").

27        These decisions, of course, are not binding on this court.  Nonetheless, the court

28   finds their reasoning to be persuasive.  Although the Chapter 13 plan and the bankruptcy

United States District Court
Northern District of California

1   petition may limit the collection activities of creditors, it does not mean that an "individual

2   is not obliged to make timely payments on his accounts while his petition for bankruptcy

3   is pending." Mortimer, 2012 WL 3155563 at *3.  Because "the debt and its delinquent

4   status still exist . . . it is not inaccurate or misleading to report that information to a CRA."

5   Biggs, 2016 WL 5235043 at *2.  The court therefore finds that, at least when the

6   bankruptcy filing and the account's disputed nature are noted, reporting balances and

7   delinquencies per the original loan terms is neither "patently incorrect" nor "misleading."

8   See Gorman, 584 at 1163.

9         Plaintiffs' contrary arguments miss the mark.  Plaintiffs' repeated themes that the

10  confirmed plan is a "final judgment" with "res judicata effect" or a "new contract" obscure

11  the issues.  To be sure, a confirmed plan may have res judicata effects on some creditor

12  claims that could have been brought in the bankruptcy proceeding.  See, e.g., In re

13  Brawders, 503 F.3d 856, 867 (9th Cir. 2007) (res judicata precludes collateral attack on

14  confirmation order).  The fact that a confirmed plan may have res judicata effects,

15  however, does not imply that reporting the debts per their original terms is therefore

16  "misleading" under FCRA.  See Jaras v. Experian Info. Sols., Inc., No. 16-CV-03336-

17  LHK, 2016 WL 7337540, at *4 (N.D. Cal. Dec. 19, 2016) ("[E]ven if a confirmation order

18  constitutes a final judgment, it constitutes a final judgment only as to the manner in which

19  the debtor will discharge his financial obligations, not the legal validity of the debt.")

20  (quotations omitted).  Similarly, although a Ninth Circuit bankruptcy appeals panel has

21  analogized a confirmed Chapter 13 plan to a "contract," In re Than, 215 B.R. 430, 435

22  (B.A.P. 9th Cir. 1997), that does not mean that this "contract's" promises govern how

23  credit information must be reported under FCRA.  A more natural understanding of the

24  terms of the new contract is that it sets the conditions by which debtors may obtain a

25  discharge.  Jaras, 2016 WL 7337540, at *4.  In short, a confirmed plan does not dictate

26  how historical credit information must be reported under FCRA.

27        Plaintiffs also rely on a statutory argument based on the effect of 11 U.S.C.

28  sections 1332(b)(2) and 1337(a) and a "critical distinction" between the terms "debt" and

United States District Court
Northern District of California

1    "claim" as used in the Bankruptcy Code.  Section 1332(b)(2) provides that a confirmed

2    plan may "modify the rights of . . . holders of unsecured claims," and section 1137(a)

3    establishes that a confirmed plan "bind[s] the debtor and each creditor."  11 U.S.C.

4    §§ 1332(b), 1337(a).  Plaintiffs assert, without citation to authority, that "claims" constitute

5    a creditor's calculation of the balance due prior to litigation, whereas a "debt" constitutes

6    the balance owed post-litigation.  This claim/debt distinction is significant because

7    furnishers do not report debts per se, but only claims.  And it is the claim, not the debt,

8    that is modified in a confirmed Chapter 13 plan by operation of sections 1332(b)(2) and

9    1337(a).  Thus, because creditors are reporting "claims" and the confirmed plan has

10   "modified" those claims, reporting must change post-confirmation.

11        This argument can be quickly dismissed because it relies so heavily on a

12   purported distinction between "claims" and "debts."  However, Congress intended that

13   "the meanings of 'debt' and 'claim' be coextensive."  Penn. Dep't of Pub. Welfare v.

14   Davenport, 495 U.S. 552, 558 (1990); accord In re Davis, 778 F.3d 809, 813 (9th Cir.

15   2015).  Plaintiffs are correct that a Chapter 13 plan may "modify" the claims of creditors,

16   11 U.S.C. § 1332(b)(2), and that, upon confirmation, the plan binds debtor and creditor,

17   11 U.S.C. § 1327(a).  While these sections may prevent creditors from collecting on a

18   loan pursuant to the original terms while the bankruptcy petition is pending, it does not

19   follow that reporting those terms is necessarily "misleading" under FCRA.  "[T]he debt

20   and its delinquent status still exist" prior to discharge.  Biggs, 2016 WL 5235043 at *2.

21        For the foregoing reasons, the court finds that, as a matter of law, the complaint

22   fails to state a claim under FCRA to the extent that the alleged "inaccuracy" is premised

23   on either (i) reporting the accurate outstanding balance as per the original terms, instead

24   of the loan balance as modified by a Chapter 13 plan; or (ii) reporting a balance as

25   delinquent or past due, if delinquency is factually accurate per the original loan terms.

26   ///

27   ///

28   ///

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii.     **Whether Noncompliance with Metro 2 Standards Necessarily Renders Reporting "Misleading"**

Plaintiffs also allege that the reporting is inaccurate because it does not comport with the credit reporting industry's Metro 2 standards.

Again, this issue is not a novel one in this district.  Other courts have found that noncompliance with Metro 2 standards, standing alone, does not make otherwise factually accurate reporting "misleading."  Giovanni v. Bank of Am., Nat. Ass'n, No. C 12-02530 LB, 2013 WL 1663335, at *6 (N.D. Cal. Apr. 17, 2013) (failure to comply with Metro 2 standards is not misleading because the complaint "does not allege that [the furnisher] was required to follow the Metro 2 Format . . . or that deviation from those instructions constitutes an inaccurate or misleading statement."); Mortimer, 2013 WL 1501452, at *12 (N.D. Cal. Apr. 10, 2013) ("[A]lleged noncompliance with the Metro 2 Format is an insufficient basis to state a claim under the FCRA."); cf. Nissou-Rabban v. Capital One Bank (USA), N.A., 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) ("[D]eviation from Metro 2, the industry standard and its chosen method of reporting, may be misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (quotation omitted) (emphasis added).

This court finds that noncompliance with Metro 2 standards does not, in and of itself, render reporting misleading.  FCRA does not mandate compliance with Metro 2 or any other particular set of industry standards.  Rather, the test is whether a reasonable potential creditor would find the reporting "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  Gorman, 584 F.3d at 1163.  This requires something more than the mere fact of noncompliance with an industry standard, although noncompliance may be relevant to whether reporting is "misleading."  The context of the reporting must be considered.

For example, Judge Chen recently observed that "reporting of the bankruptcy filing substantially diminishes the argument that failure to comply with Metro 2 reporting format could be misleading."  Mestayer v. Experian Info. Sols, Inc., No. 15-CV-03645-EMC,

2016 WL 3383961, at *2 (N.D. Cal. June 20, 2016).  If the bankruptcy filing is noted on the credit report, and it is clear to a reasonable potential creditor that the balances reported are the original loan terms (not the balances as modified by the Chapter 13 plan), then there is nothing inherently misleading about the reporting.  See id.  Even accepting plaintiffs' allegation that Metro 2 is the generally-accepted industry standard, noncompliance does not necessarily make reporting "misleading" if a reasonable creditor is able to accurately interpret the reporting in context.

Thus, to the extent that the complaint seeks to allege inaccuracies based only on the fact of noncompliance with Metro 2, the motions to dismiss must be granted.  However, because additional allegations could save the Metro 2 theory, the court will provide plaintiffs leave to amend to plead additional facts that explain why the noncompliance with Metro 2 guidelines would be actually misleading in context.

### iii.    Other Alleged Inaccuracies

Several of plaintiffs' allegations seek to assert inaccuracies that do not fall into either of the two categories described above.  In particular, plaintiffs allege that defendants' failure to report a CII D indicator, failure to note that an account is being disputed, and/or reporting a debt as "in collections"/"charged off" are inaccurate.  The court finds that several of these inaccuracies may state a claim under FCRA, but that the complaint's allegations are too conclusory as currently pleaded.

The first issue is whether the failure to report a CII D indicator, or to otherwise note that a bankruptcy petition has been filed, makes reporting "inaccurate" under FCRA.  The court finds that the complaint could state a claim on this basis.  If the fact of the bankruptcy is not noted, the reporting may be misleading, because the existence of a bankruptcy filing is information that could affect the decision-making of potential creditors.  See, e.g., Doster, 2017 WL 264401, at *6 (granting leave to amend to support allegations that the credit report "contained no indication at all that the debts were the subject of a pending bankruptcy").  Moreover, the omission of the bankruptcy filing from a credit report may render other aspects of the reporting misleading.  For example, if a creditor

sees that an account is "in collections," but no bankruptcy filing is noted, the creditor may believe that the account is being actively collected upon even though collection efforts have been stayed by the bankruptcy.  The same is true regarding the alleged failure to report that an account is being disputed.  This is information that could also adversely influence credit decisions if omitted.

As to the allegations that accounts were reported as "in collections" or "charged off," the complaint does not contain enough detail to determine whether this inaccuracy could state a claim under FCRA.  Without more context, it is not clear whether plaintiffs claim that the furnishers are reporting that the account is <u>currently</u> in collections (which is potentially misleading in light of the bankruptcy stay) or simply that the account <u>was</u> in collections at some point in the past.  The latter would not be misleading, assuming that it is factually accurate and that the bankruptcy filing is noted.

In summary, although the court finds that these alleged inaccuracies could state a claim under FCRA, the complaint as pleaded is too conclusory to tell.  With only a few sentences devoted to each disputed account, it is not clear whether a reasonable potential creditor could actually be misled.  It is not clear, for example, if there is any other information in the credit report that discloses the existence of the bankruptcy filing.  Thus, the court will provide plaintiffs leave to amend to plead additional factual detail to state a plausible claim that these alleged inaccuracies were misleading in context.

### iv.    Whether the Effect of Confirmation Is a Nonactionable Dispute over the "Legal Validity" of a Debt

In the alternative, defendants argue that FCRA only permits claims based on inaccuracies that are <u>factual</u> in nature, but all of plaintiffs' alleged inaccuracies are disputes about the "legal status" of the debt.  Defendants rely on the Ninth Circuit's decision in <u>Carvalho v. Equifax</u>, which held that "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."  <u>Carvalho v. Equifax Info. Servs., LLC</u>, 629 F.3d 876, 892 (9th Cir. 2010); <u>see also</u> <u>Chiang v. Verizon New England Inc.</u>, 595 F.3d 26, 38 (1st Cir. 2010) ("[Under FCRA,] a plaintiff's required

United States District Court
Northern District of California

1   showing is <u>factual</u> inaccuracy, rather than the existence of disputed legal questions.").

2   Defendants argue that the complaint here relies entirely on the impact that a confirmed

3   Chapter 13 plan has upon the legal status of the debt, and that this sort of dispute is not

4   actionable as an FCRA reinvestigation claim.

5   Defendants' argument appears to be directed primarily at plaintiffs' first theory of

6   inaccuracy: the effect of a confirmed Chapter 13 plan upon loan balances and

7   delinquencies.  Whatever merit this argument might have in that context, the court need

8   not reach the issue because it has already held that this alleged "inaccuracy" does not

9   state a claim as a matter of law.

10   To the extent that defendants seek to characterize other alleged inaccuracies in

11   this case as disputes about the "legal validity" of a debt, their argument fails.  <u>Carvalho</u>'s

12   holding is premised on the idea that CRAs are "not tribunals," and "are ill equipped to

13   adjudicate contract disputes."  629 F.3d at 891.  Reporting that a debtor has filed for

14   bankruptcy protection on a credit report does not require furnishers and CRAs to engage

15   in a "tribunal"-like legal analysis.  Either the debtor has filed for bankruptcy protection, or

16   he has not, as a matter of fact.  The same logic applies to the alleged failure to note that

17   an account was disputed.  The court therefore declines to dismiss the complaint on this

18   ground.

19                  **v.      Application to Inaccuracies Alleged in the Complaint**

20   In this case, plaintiffs allege inaccuracies concerning five accounts.  Plaintiffs

21   allege that BANA is inaccurately reporting that an account is "60 days delinquent" even

22   though $0 is due under the confirmed Chapter 13 plan.  Compl. ¶ 111.  Chase is

23   inaccurately reporting an account as "in collections and charged off," and fails to list "the

24   correct CII D indicator" or otherwise note the bankruptcy filing.  Compl. ¶ 112.  Former

25   defendant Commerce Bancshares is reporting a balance of $26,769, which exceeds the

26   proof of claim filed in the bankruptcy proceeding; the amount should be $7,455.36 under

27   the confirmed Chapter 13 plan.  Compl. ¶ 113.  Defendant Asset Acceptance LLC is

28   reporting balances of $5,619 and $10,214 on two accounts even though these amounts

1  should be $1,189.10 and $3,015.43 under the confirmed Chapter 13 plan; Asset

2  Acceptance also "continues to raise the balance[s]" and "is not listing the correct CII D

3  indicator."  Compl. ¶¶ 114–115.  The CRAs failed to conduct a reasonable investigation

4  and to delete the allegedly inaccurate information on these accounts.  Compl. ¶¶ 129,

5  131, 138.

6      The alleged inaccuracy in the BANA account appears to relate solely to reporting a

7  delinquency during the pending of the bankruptcy petition, which is not actionable.  The

8  alleged inaccuracy in the Chase account concerns reporting that the account is in

9  collections without listing the correct CII D indicator, which may be misleading.  The

10  alleged inaccuracy in the Commerce Bancshares account concerns the account balance,

11  which is not actionable unless that balance is inaccurate under the original loan terms.

12  The alleged inaccuracies concerning the Asset Acceptance LLC accounts concern both

13  the reported balance and a failure to list the CII D indicator; the latter may be actionable.

14  Thus, based on the above principles, the allegations against BANA and Commerce

15  Bancshares do not state a claim unless plaintiffs allege other inaccuracies in their

16  amended complaint.  The allegations against Chase and Asset Acceptance may state a

17  claim, should plaintiffs allege additional factual detail as to why this reporting was

18  misleading in context.

19          **3.      Whether Damages Have Been Sufficiently Pleaded**

20      Defendants' final basis for dismissal is that the complaint does not sufficiently

21  plead either actual or statutory damages.  While the court ultimately agrees with

22  defendants on this point, it will provide plaintiffs leave to amend to supplement their

23  damages allegations.

24              **i.      Statutory Damages**

25      Statutory and punitive damages are only available under FCRA when a defendant

26  "willfully fails to comply with" the law.  15 U.S.C. § 1681n(a)(1)(A); Syed v. M-I, LLC, No.

27  14-17186, 2017 WL 242559, at *7 (9th Cir. Jan. 20, 2017).  If a defendant's

28

United States District Court
Northern District of California

1    noncompliance is merely negligent, plaintiff is entitled only to "any actual damages

2    sustained by the consumer as a result [of noncompliance]."  15 U.S.C. § 1681*o*(a)(1).

3          To support their claim for statutory damages, plaintiffs allege that the furnishers

4    "intentionally and knowingly reported misleading and inaccurate account information to

5    the CRAs that did not comport with well-established industry standards."  Both the CRAs

6    and furnishers "failed to conduct a reasonable investigation" and "would have known" that

7    their reporting did not comport with industry standards.

8          In Safeco Insurance Company of America v. Burr, 551 U.S. 47 (2007), the

9    Supreme Court held that "willfully," as used in FCRA, encompasses knowing violations or

10    a "reckless disregard of statutory duty."  Id. at 57.  However, Safeco further held that a

11    violation of FCRA was neither willful nor reckless when it relied on an interpretation of law

12    that "albeit erroneous, was not objectively unreasonable."  Id. at 69.  Defendants claim

13    that this "safe harbor" precludes statutory damages here, arguing that their understanding

14    of what FCRA required in this context is objectively reasonable and has been

15    unanimously adopted by courts in this district.

16          Plaintiffs appear to concede that statutory damages are not available by not

17    responding to the defendants' "willfulness" argument in the briefing.  The court finds that

18    statutory damages are not available as to plaintiffs' first theory of inaccuracy—the effect

19    of the confirmed Chapter 13 plan on account balances and delinquencies.  Given the

20    body of law in this district against plaintiffs' primary theory of liability, defendants'

21    understanding of their FCRA obligations was not "objectively unreasonable" on this point.

22    Safeco, 551 U.S. at 69.

23          Plaintiffs' willfulness allegations appear to derive from the noncompliance with

24    Metro 2 standards.  The ostensible argument is that statutory damages are available

25    because defendants knew about the industry standards and intentionally chose not to

26    follow them.  However, the fact that defendants were aware of the industry standards

27    does not mean that they were aware that compliance with industry standards was

28    mandated by FCRA (indeed, it is not).  Thus, defendants could be knowledgeable about

1  Metro 2 standards, but choose not follow them, which would not render their violations

2  willful.

3        The court therefore concludes that the complaint as pleaded does not sufficiently

4  allege statutory damages.  It is not clear to the court, however, that amendment would be

5  futile, especially with respect to the inaccuracies that this court has found are potentially

6  actionable.  The court will therefore provide plaintiffs leave to amend to attempt to plead

7  facts showing that defendants acted "willfully" as to these inaccuracies.

8                    **ii.    Actual Damages**

9        FCRA does not require allegations of a "denial of credit or transmission of the

10 report to third parties" to establish actual damages.  <u>Guimond v. Trans Union Credit Info.</u>

11 <u>Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995).  However, the law does require that plaintiffs

12 suffered some actual harm as a result of defendants' alleged FCRA violations.

13       Here, plaintiffs allege that as "a direct and proximate result of Defendants' willful

14 and untrue communications,"  they "suffered actual damage including but not limited to

15 inability to properly reorganize under Chapter 13, reviewing credit reports from all three

16 consumer reporting agencies, time reviewing reports with counsel, sending demand

17 letters, diminished credit score, and such further expenses in an amount later to be

18 determined at trial."  It is not clear what plaintiffs mean by "inability to property reorganize

19 under Chapter 13."  Plaintiffs do not allege that defendants' reporting somehow interfered

20 with the bankruptcy process.  Thus, whether actual damages have been pleaded hinges

21 on whether a "diminished credit score," prelitigation attorneys' fees, or costs in reviewing

22 credit reports and sending demand letters are recoverable as "actual damages."

23       There is persuasive authority suggesting that a diminished credit score, standing

24 alone, does not represent actual damages.  <u>King v. Bank of Am., N.A.</u>, No. C-12-04168

25 JCS, 2012 WL 4685993, at *6 (N.D. Cal. Oct. 1, 2012) ("[A] mere drop in Plaintiff's credit

26 score without any damages actually incurred would likely not satisfy the actual damages

27 requirement.") (citations omitted); <u>Duarte v. J.P. Morgan Chase Bank</u>, No.

28 CV131105GHKMANX, 2014 WL 12561052, at *4 (C.D. Cal. Apr. 7, 2014) ("Plaintiff

United States District Court
Northern District of California

1  asserts that . . . the inevitable consequence of Defendant's alleged negative reporting—

2  impaired credit—constitutes actual damage for purposes of the CCRAA.  This is

3  incorrect.").  This is logical because, absent an allegation that plaintiff "was denied credit,

4  lost credit, had his credit limits lowered, or was required to pay a higher interest rate for

5  credit," the negative effects of a lowered credit score did not cause "actual" harm.  See

6  Young v. Harbor Motor Works, Inc., No. 2:07CV0031JVB, 2009 WL 187793, at *5 (N.D.

7  Ind. Jan. 27, 2009).

8      Moreover, plaintiffs appear to concede that the costs associated with requesting a

9  credit report, discovering the alleged inaccuracies, and sending a dispute letter are not

10  recoverable.  The Ninth Circuit has not addressed this issue, but the Second Circuit has

11  held that "actual damages" may include "out-of-pocket expenses for attorney's fees

12  incurred by a plaintiff prior to litigation of his FCRA claims."  Casella v. Equifax Credit

13  Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995).  However, "expenses incurred merely to

14  notify [CRAs] of inaccurate credit information, and not to force their compliance with any

15  specific provision of the statute, cannot be compensable as 'actual damages' for a

16  violation of the FCRA."  Id.  Applying this distinction, plaintiffs' current damages

17  allegations amount to no more than expenses to notify furnishers and CRAs of the

18  alleged inaccuracies.  This is a process that FCRA contemplates, 15 U.S.C. § 1681s-

19  2(a)(1)(B)(i), and is thus not itself a source of damages resulting from an FCRA violation.

20      The court therefore finds that the complaint as pleaded does not sufficiently allege

21  actual damages.  However, although the complaint currently does not allege emotional

22  distress damages, plaintiffs' counsel represented at the hearing that he intended to

23  amend the complaint to add allegations of emotional distress.  Damages for "emotional

24  distress and humiliation" as a result of an FCRA violation are recoverable as actual

25  damages in the Ninth Circuit.  Guimond, 45 F.3d at 1333.  Thus, the court will grant

26  plaintiffs leave to amend to plead facts showing actual damages.

27  ///

28  ///

### 4.     The CCRAA Claim

California Civil Code § 1785.25(a) provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Just as in FCRA, inaccuracy is a required element as the statutory language explicitly requires that "the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). In general, CCRAA "mirrors" FCRA, such that the CCRAA claim survives only to the extent that the FCRA claim survives. Guimond, 45 F.3d at 1335; Olson v. Six Rivers Nat'l Bank, 111 Cal. App. 4th 1, 12 (2003) ("Because [CCRAA] is substantially based on [FCRA], judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions."). Because the court has concluded that the FCRA claim must be dismissed for failure to sufficiently plead an actual inaccuracy and damages, the CCRAA claim must be dismissed as well, with leave to amend, for the same reasons.

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are GRANTED. Plaintiffs are granted leave to file an amended complaint within 21 days of the date of this order. The amended complaint must sufficiently plead actual inaccuracies based upon, e.g., (i) a failure to report the fact of the bankruptcy filing or to use the correct CII D indicator; or (ii) a failure to report that an account is being disputed. Plaintiffs may not rely on a failure to update account balances to reflect the confirmed Chapter 13 plan, and may not rely on the failure to comply with Metro 2 standards—except as those standards pertain to actual inaccuracies, such as a failure to note the bankruptcy filing or the disputed nature of the account. The amended complaint must also sufficiently allege either statutory or actual damages. The amended complaint may not add new claims or parties without leave of court or the consent of defendants.

Following the hearing, Experian also filed a motion to dismiss the complaint making the same arguments, among others, as the moving defendants. See Dkt. 63.

Should this motion be fully briefed, the court would undoubtedly rule the same way on the same issues.  In order to avoid the expenditure of resources by the parties and the court, the court administratively TERMINATES Experian's motion and VACATES the May 10, 2017 hearing date.  After the amended complaint is filed, Experian may file a new motion to dismiss directed to the amended factual allegations, or it may notify the court that it wishes to reactivate its administratively terminated motion.

**IT IS SO ORDERED.**

Dated: March 20, 2017

_____

PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California